UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIRHAWK INTERNATIONAL, LLC,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ONTEL PRODUCTS CORPORATION,<br>et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 18-cv-0073-MMA-AGS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL (ECF No. 74)** |

In this trademark case, one of defendant's corporate officers testified that the management team decided to use the alleged infringing trademark after legal counsel "clear[ed] the name for us." Plaintiff's motion to compel discovery about this legal advice turns on whether this testimony—in conjunction with defendant's affirmative defenses and the circumstances of this case—amounts to a waiver of the attorney-client privilege. It does. But defendant may retain its privilege by formally abandoning any public use of attorney-client advice to defend itself.

## BACKGROUND

Plaintiff Airhawk International, LLC, which produces truck and motorcycle seat air cushions, owns trademarks on the name "Airhawk" and the image of a hawk's head profile between the words "Air" and "Hawk." (ECF No. 1, at 2-3, 13-15.) Defendant Ontel Products Corporation uses similar marks on its "Air Hawk"-branded air compressors. (*Id.*

1

at 4.) Airhawk sued Ontel for trademark infringement. In Ontel's affirmative defenses, it asserted that any trademark violation was with "innocent intent," and that it "at all times acted in good faith." (ECF No. 5, at 8-9.)

To delve deeper into these defenses, Airhawk deposed Jason Biziak, who was Ontel's Vice President of Product Strategy and Business Development at the time Ontel adopted the "Air Hawk" brand. In the crucial exchange, Biziak mentioned that Ontel's legal counsel "clear[ed] the name for us," which Airhawk contends waived attorney-client privilege regarding such clearance:

> Q  And can you recall when in the development process for Ontel's Air Hawk compressor you became aware of [plaintiff Airhawk's] product and trademark?
>
> A  Not specifically, but during—I believe it was during the clearance of our use of the trademark "Air Hawk" for our product.
> . . . .
> A  At some point this [Ontel upper management] group would have come to agreement that we liked the name to market and distribute the product under.
>
> Q  Notwithstanding the existence of a trademark on the name?
> . . . .
> A  We would have based that decision, of course, you know, after having had professional legal counsel clear the name for us.

(ECF No. 74-2, at 22, 24-25.)

Airhawk now moves to compel production of any trademark clearance-related documents that Ontel previously marked as privileged and to reopen discovery to permit more inquiry into this topic.

**DISCUSSION**

**A.     Implied Waiver of the Attorney-Client Privilege**

The attorney-client privilege is impliedly waived when "(1) the party asserts the privilege as a result of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its [case or]

2

defense." *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995) (citation omitted). In assessing any claimed waiver, the "overarching consideration" is whether applying the privilege "would be 'manifestly unfair' to the opposing party." *Id.* (citation omitted).

By asserting and maintaining "innocent intent" and "good faith" defenses, Ontel made affirmative acts. But the parties bitterly contest whether these affirmative acts put any privileged information "at issue." An attorney-client communication is "at issue" when a defendant relies on it as a basis of its defense. *Cf. Rich v. Bank of Am., N.A.*, 666 Fed. App'x 635, 641-42 (9th Cir. 2016) (finding no implied waiver when defendant "discussed the existence of these [attorney-client] communications, [but] did not use their contents as a basis for any claims or defenses"). On the other hand, "[a]dvice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner." *Genentech, Inc. v. Insmed Inc.*, 236 F.R.D. 466, 469 (N.D. Cal. 2006) (citation omitted). "Waiver is not likely to be found when the statements alleged to constitute waiver do not disclose the contents of a specific communication between client and attorney." *Id.* (citation omitted).

Here Biziak testified that Ontel pushed forward with the "Air Hawk" trademark after its attorneys "clear[ed] the name for us." He divulged not just the existence and relevance of attorney communications, but the contents—that the name was "clear" for use. Because that attorney advice also strongly supports Ontel's "innocent intent" and "good faith" defenses, it is now at issue.

To avoid this conclusion, Ontel raises three arguments. First, Ontel points out that it has not asserted an advice-of-counsel defense, which proves it did not intend to waive its privilege. (ECF No. 76, at 7.) Yet privileged information may be at issue for a variety of defenses. "Courts have found implied waiver of attorney-client privilege in instances in which the magic words 'advice of counsel' are not used but where the circumstances underlying an affirmative defense necessarily rely on otherwise privileged material."

3

*Natural-Immunogenics Corp. v. Newport Trial Grp.*, No. SACV 15-02034 JVS(JCGx), 2018 WL 6138160, at *5 (C.D. Cal. Jan. 24, 2018).

Second, Ontel contends that it will prove its innocent intent and good faith through a variety of means unrelated to its counsel's clearing the trademark. (ECF No. 76, at 9-10.) But there is little evidence to support this contention. Rather, the main evidence before the Court regarding Ontel's thought process on the trademark comes from Biziak's deposition. The only basis he provided for moving forward with the "Air Hawk" name, despite the existing Airhawk trademarks, was that counsel cleared it. (ECF No. 74-2, at 25.)

Ontel's third theory, revealed during oral argument, is that Biziak did not actually divulge the contents of a communication. That is, when Biziak testified that the attorneys "clear[ed] the name," this was merely a term of art, which meant counsel prepared a trademark "clearance report" that might either clear the name for use or not. In other words, in Ontel's telling, the phrase "they cleared the name" means "they cleared the name *or* they did not clear the name." This strained interpretation stretches Biziak's actual words to the breaking point: "We would have based that decision, of course, you know, after having had professional legal counsel clear the name for us." (ECF No. 74-2, at 25.) Under the ordinary reading, this statement reveals the contents of an attorney-client communication—the attorneys approved the use of the "Air Hawk" name. No evidence suggests that Biziak harbored some special, counterintuitive meaning for the word "clear."

Finally, before determining if Ontel impliedly waived its privilege, this Court must analyze whether the attorney-client information is vital to Airhawk's case. Airhawk is entitled to prepare for Ontel's defenses. Biziak testified that the upper management group based its decision on counsel's clearing the name, and Ontel has presented little evidence to this Court for how it might otherwise support its "good faith" and "innocent intent" defenses. Thus, the Court concludes that these communications are vital to Airhawk's case, and it would be manifestly unfair to permit Ontel to rely on that testimony—or testimony like it—while asserting a defensive privilege.

## B. Express Waiver of the Attorney-Client Privilege

These same facts may also support a claim for express waiver. As a member of Ontel's control group, Biziak disclosed the contents of an attorney-client communication and thereby arguably waived any privilege. *See Lambright v. Ryan*, 698 F.3d 808, 834 (9th Cir. 2012) ("An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege . . . ." (citation omitted)). But at oral argument, Ontel's counsel claimed that Biziak is a former employee, which may affect his authority to expressly waive Ontel's privilege. *See United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996) (holding that corporate officers and directors lose the power to "assert and waive the corporation's attorney-client privilege" when they are replaced by new management (citation omitted)). Ontel did not provide any evidence that Biziak is an ex-employee, and the materials attached to the briefing suggest otherwise. Based on the implied-waiver analysis above, however, the Court need not determine if Biziak expressly waived Ontel's privilege.

## C. Scope of the Waiver

The fact that a waiver occurred does not end the inquiry. To compel additional discovery, that discovery must not only be non-privileged, but also relevant and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). The Court must strictly tailor discovery orders that encroach on the attorney-client relationship, as the scope of implied waivers should be "no broader than needed to ensure the fairness of the proceeding[]." *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003).

After carefully reviewing the disputed materials *in camera*, the Court concludes that only the following are relevant and proportional to the needs of the case, and will serve as the scope of the waiver here:

(1) The trademark report; and

(2) Four discovery pages, Bates-marked ONTEL003669-ONTEL003672.

Additionally, Airhawk may elect to take one additional hour of deposition from a Rule 30(b)(6) deponent to discuss those documents, but the deposition must be taken within 30 days of receiving all of the above discovery.

**D.  Alternative Remedy at Ontel's Election**

In the alternative, Ontel may preserve the confidentiality of its communications by abandoning the basis for the implied waiver. *See Bittaker*, 331 F.3d at 721 ("[T]he holder of the privilege may preserve the confidentiality of the privileged communications by choosing to abandon the claim that gives rise to the waiver condition."). The drastic remedy of full abandonment is not necessary here, as Ontel correctly points out other ways it could prove its affirmative defenses. To preserve the confidentiality of its communications, Ontel must file a stipulation that: (1) it will not use attorney-client communications in any way before the Court—including testimony, evidence, argument, and written submissions—to support its "innocent intent" or "good faith" affirmative defenses; and (2) it will ensure that its witnesses are instructed about this stipulation, to ensure that they do not inadvertently disclose such attorney-client communications.

## CONCLUSION

Airhawk's motion to compel is only granted to this extent: In the next 14 days, Ontel must (1) file a stipulation as outlined above or (2) disclose its trademark report as well as the four discovery pages, Bates-marked ONTEL003669-ONTEL003672. If Ontel chooses the second option, it must make a Rule 30(b)(6) deponent available for one additional hour of deposition within 30 days of completing the disclosure ordered above. Otherwise, Airhawk's motion is denied. In the event of an objection to the District Judge, those deadlines will be stayed pending resolution of the objection.

Dated:  July 23, 2019

_____
Hon. Andrew G. Schopler
United States Magistrate Judge